**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**UATISONE MASANIAI, Defendant**

High Court of American Samoa
Trial Division

CR No. 33-94

April 25, 1995

Before KRUSE, Chief Justice, ATIULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Fainu`ulelei F. Ala`ilima Utu, Assistant Attorney General
For Defendant, Reginald Gates, Assistant Public Defender

Order Rejecting Second Plea Agreement:

The information filed in this matter on July 21, 1994, charges the defendant with: Count I: Unlawful use of a weapon, in violation of A.S.C.A. § 46.4203(a)(4), a Class D felony, punishable by a term of imprisonment not to exceed five years and/or a fine of $5,000, or both; Count II: Assault in the Second Degree, in violation of A.S.C.A. § 46.3521(a)(1), also a Class D felony, punishable by a term of imprisonment not to exceed five years and/or a fine of $5,000, or both; and Count III: Unlawful Possession of Arms without a License, a Class A Misdemeanor, punishable by a term of imprisonment not exceed one year, and/or a fine of $1,000, and/or confiscation of said arm, or all of the above. The matter was initially set for trial on November 15, 1994.

On the date of trial, the parties submitted a plea agreement, under the

7

provisions of T.C.R.Cr.P. Rule 11(e)(1)(B),[1] for the court's consideration. The court, pursuant to Rule 11(e)(B)(2), deferred its decision on whether to accept or reject the plea agreement until it had the opportunity to consider a presentence report. The matter was then continued to December 2, 1994, while a presentence report was prepared by the High Court's Probation Office.

On December 2, 1994, the court again asked the defendant a series of questions to ensure that he understood the nature of the agreement and that he was in complete agreement with its terms. Upon questioning, however, the defendant balked at the suggestion that the sentencing parties' sentencing recommendation, of "no jail," under a subdivision 11(e)(1)(B) type agreement was not binding on the court, and that the defendant had no right to withdraw his plea of guilt if the court did not accept the sentencing recommendation. As there seemed to be some confusion between counsel and his client, the court then continued further consideration of the plea agreement to allow the defendant to confer with counsel.

On December 5, 1994, the plea agreement was again taken up. Since the defendant remained hesitant in leaving the matter of sentencing up to the court, the court rejected the plea agreement and set the matter for jury trial on January 24, 1995. Subsequently, the trial date was postponed until April 25, 1995, upon stipulation of the parties, and upon defendant's written waiver of his right to a speedy trial.

On April 25, 1995, the court convened for trial, but neither party was ready for trial; the court was advised of yet another plea agreement, this time pursuant to T.C.R.Cr.P. Rule 11 (e)(1)(C). The plea agreement under this subdivision would essentially permit the defendant to withdraw his plea if the court did not accept the parties' sentencing recommendation of "no jail."

## DISCUSSION

■ A subdivision (e)(1)(C) type plea agreement, which essentially attempts to remove the court's discretion in the sentencing process, goes against the grain. The rule, which was adopted from the Federal Rules of

---

[1] A plea agreement under this subdivision of the rule permits a sentencing recommendation from the parties which is not binding on the court, and the defendant may not withdraw his plea of guilt if the court does not follow the parties' sentencing recommendation. *Cf.* T.C.R.Cr. P. 11 (e)(1)(A) and (C).

Criminal Procedure, is especially useful in those jurisdictions which are confronted regularly with a congested criminal docket. *See* F.R.Cr.P., 11(e) Notes of Committee on the Judiciary, House Report No. 94-247(B). In those circumstances, the procedure provided under subdivision (e)(1)(C) effectively assists in clearing an otherwise clogged docket. Fortunately, this is not the situation in the local courts. With its relatively manageable caseload, the demands of judicial economy are hardly pressing factors in the equation. In short, the territorial courts have the time to hear criminal cases. Consequently, the High Court has in practice consistently rejected subdivision (e)(1)(C) type plea agreements, save in those very rare occasions where the interests of justice were found to be better served by their acceptance. This is not one of those very rare occasions. We fail to see the logic in the government's attempt to rationalize the plea agreement, on the argument that a "no jail" sentence would somehow diffuse family tension, which has supposedly arisen as a result of the incident between the defendant and the complainant, giving rise to these proceedings. These are exactly the sort of considerations that ought to be left to the sentencing court, and not the prosecutor. At the same time, while the defendant has the unquestionable right to a trial, he does not have the right to proceed on his terms.

We conclude that justice would not be served by the acceptance of this plea agreement, and accordingly reset this matter for jury trial on May 2, 1995.

It is so ordered.